# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JEFFREY A. ROWE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 3:08-CV-92 TS ) |
| SCOTT BELL, | ) ) |
| Defendant. | ) ) |

# OPINION AND ORDER

While he was a prisoner at the LaPorte County Jail, Jeffrey Rowe, proceeding *pro se*, sued Scott Bell, the jail commander, pursuant to 42 U.S.C. § 1983. The Plaintiff contends that the Defendant violated his rights under the First, Eighth, and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), when the Defendant retaliated against the Plaintiff for exercising his First Amendment rights, hindered his access to counsel and to the courts, deprived him of personal property, and substantially burdened his free exercise of religion. This matter is before the Court pursuant to its statutory screening obligation. *See* 28 U.S.C. § 1915A.

# SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6), which provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks, and ellipsis omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (quotation marks, ellipsis, citations, and footnote omitted).

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3 (quotation marks and citation omitted). Nevertheless, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation marks and citations omitted). However, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation

marks omitted)). Additionally, a plaintiff can plead himself out of court if he pleads facts which show he has no claim. *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

**COMPLAINT ALLEGATIONS**

The Plaintiff alleges that, on or about January 15, 2008, Jail Commander Scott Bell ordered that he be moved from a jail cell to an "extremely cold" temporary holding cell in the jail's processing area, TH-5, in retaliation for filing a grievance on January 11, 2008, and helping other prisoners file grievances regarding clothing issues. The Plaintiff alleges that, although the jail's heating and cooling system is faulty, "it is not cold all over the jail." After being in TH-5 for about a month, the Plaintiff was moved to another temporary cell, TH-12. Although TH-12 cell was warm, initially, it too became extremely cold after the Plaintiff had occupied it for a few days. As result of being subjected to the cold temperature in the temporary holding cells, the Plaintiff alleges he developed "a chronic sore and itchy throat" that caused "constant pain and discomfort." (Pl.'s Am. Compl. 3, DE 7.)

In addition to the retaliation claim, the Plaintiff declares that his placement in the temporary holding cell under the complained of conditions was cruel and unusual punishment and a deprivation of a liberty interest created by the Jail's Rule Book. (Pl.'s Am. Compl. 2–3). The Plaintiff makes other complaints about the conditions in the temporary holding cell, which he alleges amount to unconstitutional retaliation, cruel and unusual punishment, and unconstitutional punishment of a pretrial detainee. He states that he was allowed out of the cell for recreation one hour each day, either "very late at night or early morning," when he could not interact with other prisoners who were asleep during his recreation periods. (*Id.* at 4.) It was difficult for his family to visit him because of conflicts between the available visiting hours and family members' work schedules. Also, when his family was able to visit, their time was cut

short "for no legitimate reasons. " (*Id.*) The Plaintiff complains that he seldom got books because the jail's library carts do not often circulate in the temporary holding cells. The Plaintiff alleges that Defendant Bell knew that all of these conditions existed in the temporary holding cell.

The Plaintiff also charges that, because the jail's disciplinary procedures do not distinguish between detainees and convicts, his due process rights were violated when he suffered phone restrictions and loss of commissary privileges for minor rule infractions.

In asserting that the Defendant hindered his access to defense counsel and to the courts, the Plaintiff complains that restricting his access to the telephone hindered access to his attorney. The Plaintiff also complains that, because the jail's law library has no federal law resources and the other materials are outdated, he cannot collaterally attack his conviction and litigate civil claims regarding the conditions of confinement.

The Plaintiff also makes a claim under RLUIPA. He contends that the restricted recreation times, lack of access to the library cart, and limited television programming, combined with the fact that the jail does not employ a chaplain, all place a substantial burden upon his ability to practice his religion. The Plaintiff asserts his religion requires "worship services & fellowship." (Pl.'s Am. Compl. 7–8.)

Finally, the Plaintiff contends he was deprived of personal property (shoes, watch, and necklace) without just compensation in violation of the Fifth Amendment when prison staff lost his belongings or allowed them to be stolen.

## ANALYSIS

### A. Retaliation Claim

The Plaintiff alleges that the Defendant violated his First Amendment rights by causing his placement in an extremely cold temporary holding cell to retaliate against him for filing a grievance and helping other prisoners do the same.

Prison officials may not retaliate against a prisoner for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). To prevail on a First Amendment retaliation claim, the Plaintiff will have to show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) and *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains. *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996).

The Plaintiff contends that a few days after he filed a grievance and helped other prisoners file grievances concerning clothing issues the Defendant directed that he be moved to TH-5 "due to his helping others file grievances." (Pl.'s Am. Compl. 3.) He alleges that this cell is extremely cold. The Plaintiff has adequately alleged, for purposes of surviving screening, that he engaged in activity protected by the First Amendment. He does not state the nature of the clothing issue that was the subject of the grievances, but a plausible inference is that speaking about the issue was not inconsistent with legitimate penological objectives. *See Bridges*, 557 F.3d at 551 (concluding that prisoner speech can be protected even when it does not involve a

5

matter of public concern, and that the legitimate penological interests test applies to prisoner speech). The Plaintiff has also asserted factual allegations to support an inference that the conditions in the temporary holding cell would "deter a person of ordinary firmness" from exercising First Amendment activity in the future. *Bridges*, 557 F.3d at 552 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Further, the Plaintiff sufficiently alleges that his protected activity was the motivating factor for the Defendant's actions. Although this allegation is not entitled to a presumption of truth because it is a mere conclusion, *see Ashcroft v. Iqbal*, — S. Ct. —, 2009 WL 1361536 at * 13 (May 18, 2009) (stating that legal conclusions are not entitled to the assumption of proof), his Complaint sets forth a chronology of events from which retaliation can plausibly be inferred, s*ee Zimmerman,* 226 F.3d at 574 (reversing district court's § 1915A dismissal because an inmate's allegations established that the exercise of his First Amendment right was closely followed by the retaliatory act). Last, the Amended Complaint asserts that the named Defendant directly participated in the retaliation by ordering that the Plaintiff be moved to the cold holding cell. Giving the Plaintiff the benefit of the inferences to which he is entitled at the pleading stage, he has stated a claim for free speech retaliation.

**B.     Unconstitutional Punishment**

**1.     *Cruel and Unusual Punishment***

The Plaintiff maintains that subjecting him to extreme cold constituted cruel and unusual punishment. The Eighth Amendment does not apply to pretrial detainees, but pretrial detainees are entitled to at least as much protection as the constitution provides convicted prisoners. *Board v. Farnharm*, 384 F.3d 469, 477 (7th Cir. 2005). The Seventh Circuit has found it "convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'"

*Id.* at 478. The plaintiff must show that: (1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to his health or safety. *Id.*

Because life's necessities include shelter and heat, *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006), prisoners have a right to be free from extreme cold temperatures, *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (noting that prison officials must protect their wards from temperatures that are so low as to cause severe discomfort). At this stage of the litigation, the Court cannot assess all the factors that are relevant to determining whether the temperatures endured by the Plaintiff were objectively serious. *See, e.g., Dixon*, 114 F.3d at 644 (stating that courts should examine factors such as the severity of the cold, its duration, whether the prisoner had adequate alternative means to protect himself from the cold, and the existence of other uncomfortable conditions). The Plaintiff, by alleging that he was subject to extremely cold blowing air in January, which caused him to develop a chronic sore and itchy throat, and that the Defendant knew of the conditions in the temporary holding cells, provides the Defendant with fair notice of the nature of the claim, as well as the grounds on which the claim rests. The Plaintiff may proceed with his claim that the extremely cold temperature in the temporary holding cell constituted unconstitutional punishment.

The Plaintiff also claims that the cumulative effect of other conditions in the temporary holding cell amounted to punishment. These conditions include only being allowed out of his cell for one hour per day, being arbitrarily denied telephone access and visitation hours, and not getting library books "very often." Although a Court must examine the totality of circumstances when considering a claim challenging the conditions of confinement, *Rhodes v. Chapman*, 452 U.S. 337, 363–63 (1981), the cumulative effects must, nevertheless, add up to a "deprivation of a single identifiable, human need such as food, warmth, or exercise," *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994). Mere "[i]nactivity, lack of companionship and a low level of

7

intellectual stimulation do not constitute cruel and unusual punishment." *Bono v. Saxbe*, 620 F.2d 609, 614 (7th Cir. 1980). The Plaintiff's allegations reveal that the restrictions on his out-of-cell time, library materials, telephone access, and visitation with people outside of the jail did not deprive him of basic human needs or life's necessities. Thus, the Plaintiff's claim regarding the conditions of his confinement is limited to his complaints about the temperature in the temporary holding cells.

**2.    *Due Process Claim***

The Plaintiff alleges that, because he is a pretrial detainee, the conditions in the temporary holding cell amount to impermissible punishment for him. His theory is that "the due process clause prohibits defendants from punishing him at all." (Pl.'s Am. Compl. 5). The Plaintiff is wrong in this assertion. Although the rights of pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment, which prohibits punishment of persons who have not been convicted of a crime, *Martin v. Tyson*, 845 F.2d 1451, 1455 (7th Cir. 1988), it is permissible to "punish" a pretrial detainee for misconduct while in pretrial custody if the detainee has been afforded procedural protection, *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999). The Seventh Circuit explained in *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), that

> [a] pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons, . . . [and a]s long as the purpose was indeed a preventive rather than a punitive one, he would not be entitled to notice and a hearing.

286 F.3d at 438 (citations omitted).

The Plaintiff specifically states that he was sanctioned with phone restriction, loss of commissary, and visitation privileges for "minor rule violations." (Pl.'s Am. Compl. 4–5). The jail could lawfully punish him for these disciplinary infractions as long as he was afforded due process. The Plaintiff does not allege that he was denied the necessary process (rather, he believes that any and all punishment of pretrial detainees is unlawful *per se*). The Plaintiff's allegation that the jail's disciplinary policies do not distinguish between "detainees and convicts," does not clarify or state a claim. The Plaintiff's Complaint cannot support a due process claim using the false premise that the jail could not punish him because he was a pretrial detainee.

However, the most liberal reading of the Complaint is that certain restrictions were simply characteristic of the temporary holding cells, and that his placement in the temporary holding cell was not related to any rule infraction. (Pl.'s Am. Compl. ¶ 21.) Nor does it appear, on the face of the Amended Complaint, that his placement in the temporary holding cell was for managerial reasons. (The Plaintiff alleges it was to retaliate against him for engaging in protected speech.) Additionally, he claims that some of the restrictions on using the phone were arbitrarily imposed, i.e., not for managerial reasons or in response to rule infractions. Thus, to the extent that he suffered "punishment" that was not a response to a disciplinary infraction or to a managerial decision, it survives threshold review.

D.   **Access to Courts Claim**

The Constitution protects a prisoner's right of access to the courts, and state actors must respect that right by not impeding prisoners' efforts to pursue legal claims. *Lewis v. Casey*, 518

9

U.S. 343, 349–54 (1996); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). That right is violated when a prisoner is deprived of such access and suffers actual injury as a result. *Lewis*, 518 U.S. at 350. The prisoner must allege in his complaint that the alleged deprivations caused an actual injury, *Lewis*, 518 U.S. at 350, and "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

> The Supreme Court has also made it clear that a prisoner's right of access to the courts does not guarantee the effective presentation of his civil claims. The right of access to the courts protects prisoners from "being shut out of court," *see Christopher v. Harbury*, 536 U.S. 403, 413 (2002); it does not exist to "enable the prisoner . . . to litigate effectively once in court." *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (to expand the "right of access" to guarantee prisoners a right to "litigate effectively" would essentially "demand permanent provision of counsel, which we do not believe the Constitution requires"); *see also Bounds v. Smith*, 430 U.S. 817, 827 (1977) ("right of access to the courts requires prison authorities to assist inmates in the *preparation and filing of meaningful legal papers"* (emphasis added)).

*Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007) (parallel citations omitted).

The Plaintiff alleges that the case citations made available in the law library are only guaranteed to be good law through 2004 or 2005 because there is no access to Shepard's Book of Citations or to LexisNexis or Westlaw. The Plaintiff claims that, because of this deficiency, he "cannot properly collaterally challenge his conviction in state court that he is representing pro se," and that this same rationale applies to a federal petition for writ of habeas corpus that he has filed in this Court. (Amend. Compl. 6–7.) He also complains about the lack of information on how to bring and litigate a federal civil rights complaint, specifically one regarding conditions of

confinement. He contends that there are no federal resources available, including the statutory requirements of the Prison Litigation Reform Act, and that the state law cases are not on point.

The Plaintiff has not sufficiently alleged facts from which it can be inferred that he is being denied the ability to file non-frivolous legal claims, or otherwise "shut out of court." The most favorable inference from his Complaint is that his collateral challenges may misstate a point of law that has changed since 2004 or 2005. He is also concerned that any civil action he brings to litigate the conditions of confinement may not fully comply with the Prison Litigation Reform Act or state the proper substantive claims. This speculative, future harm related to the effectiveness of the claims he may present does not state a claim that he "was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Lewis*, 518 U.S. at 351. The Plaintiff has not pointed to a particular condition of confinement that he has not been able to challenge in federal court, and, indeed, challenges several such conditions in this litigation. The Plaintiff's challenge to the law library is more akin to a demand for "particular types of assistance" in the form or certain research tools (LexisNexis, Westlaw, Shepard's), to which he has no constitutional right. *See Lehn v. Holmes*, 364 F.3d 862, 865–66 (7th Cir. 2004) (holding that inmates do not have a right to "any specific resources such as a law library or laptop with CD-Rom drive or a particular type of assistance"). Thus, his well-pleaded allegations do not plausibly give rise to an entitlement to relief.

E. **Telephone Communication with Counsel**

The Plaintiff complains that the Defendant's restrictions on telephone access has impermissibly infringed upon his right to communicate with his attorney. (Pl.'s Am. Compl. 6).

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "In the First Amendment context, . . . a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting means of communication with individuals outside of prison). Prison officials can limit communications, particularly telephone communications, to ensure safety, security, and the orderly operations of their institution. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). They may also limit communications to counsel. *Aswegan v Henry*, 981 F. 2d 313, 314 (8th Cir. 1992). Although the Plaintiff alleges he was denied use of the telephone longer than the jail's policy allows on at least one occasion, he does not allege and it is not reasonable to infer he was completely deprived of access to his attorney, or that his communication with counsel was insufficient or detrimental to his case. His theory is that any limit on his access to counsel violates the Jail's Rule Book, and, thus, violated a liberty interest created by the policy. For reasons set forth in Section G below, this allegation does not state a claim and will be dismissed.

F.     Religious Land Use and Institutionalized Persons Act (RLUIPA)

The Plaintiff also asserts a violation of his right to practice his religion under the Religious Land Use and Institutionalized Persons Act (RLUIPA). RLUIPA prohibits a prisons that receive federal funds from imposing a substantial burden on a prisoner's religious exercise

unless the burden furthers a compelling governmental interest and does so by the least restrictive means. *See* 42 U.S.C. § 2000cc-1(a); *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).

RLUIPA does not define substantial burden. In *Civil Liberties for Urban Believers v. Chicago*, 342 F. 3d 752, 761 (7th Cir. 2003), the Seventh Circuit described the meaning of "substantial burden" as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." The Supreme Court has explained that, when considering whether a substantial burden was the least restrictive means of furthering a compelling government interest, courts are to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v Wilkerson*, 544 U.S. 709, 723 (2005) (citations and quotation marks omitted).

The Plaintiff alleges that religious worship services and fellowship are required practices for his religion, and that the jail's practices prevent him from attending or from viewing (on television) religious services, from fellowship with other inmates, and from regularly reading religious books. The Plaintiff's claim that his religion exercise is substantially burdened is plausible on its face. At this stage of the litigation, there is no evidentiary record from which the Court can determine whether this burden was the result of interests of the jail that were being furthered by the least restrictive means, and it would be premature to dismiss the Plaintiff's claim. *Ortiz v. Downey*, — F.3d —, 2009 WL 839515, at *5 (7th Cir. Apr. 1, 2009) ("Mr. Ortiz's complaint alleges that Chief Downey's actions imposed a substantial burden on his ability to exercise his religion; this is all that is required to state a claim under RLUIPA.")

## G. Fifth Amendment Due Process

In various places throughout the Amended Complaint, the Plaintiff refers to a liberty interest created by the jail's written policies. However, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that liberty interests under the Due Process Clause are not created by such state prison regulation, but are only implicated if conditions impose an "atypical, significant deprivation." *Id.* at 482. The alleged limitations on the time the Plaintiff is allowed out of the cell, his telephone access, and his visitation hours do not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. Thus, insofar as the Plaintiff complains that he had a protected liberty interest in not being placed in the jail's temporary holding cells, his due process claim fails to state a claim for relief.

## H. Taking of Personal Property[1]

The Plaintiff claims that the jail allowed his personal property to be lost or stolen, and that he has been deprived of this property "for community usage without just compensation" in violation of the Fifth Amendment. (Pl.'s Am. Compl. 7.) The Plaintiff maintains that the "Defendant is responsible for safe keeping of inmates' personal property and compensation should such property be lost or stolen at the Jail's fault." (*Id.*)

The Takings Clause of the Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation." U.S. Const. amd. V. The "Taking Clause has

---

[1] In a letter docketed on February 17, 2009 [DE 18], the Plaintiff states that he would like to voluntarily dismiss the claims regarding the loss of his personal property "as I just learned that I have to go thru state courts before I can bring them in a U.S. Dist. Court." For completeness of the record, the Court will address the property claims despite the Plaintiff's letter.

been held to apply to two types of governmental action: first, the taking of physical possession or control of an interest in property for some public purpose; and second, regulations prohibiting private uses." *Lee v. City of Chi.*, 330 F.3d 456, 474 (7th Cir. 2003); *see also See Paalan v. United States*, 51 Fed. Cl. 738, 651 (Fed. Cl. 2002) ("The fact that the Government legally may have taken plaintiff's property as evidence, but then lost it, does not state a claim for taking, because the Government thereby does not take property for public use."). Although the Plaintiff alleges "community usage" of the property, this is the type of allegation that is not entitled to any presumption of veracity. *Iqbal*, 2009 WL 1361536 at *13 (explaining that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and that "t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Stripped of legal conclusion, the Amended Complaint does not plausibly suggest that the jail—when it allowed shoes, a watch, and a necklace that the Plaintiff's father mailed to him to be lost or stolen—thereafter put his property to public use. Thus, the allegations do not "permit the court to infer more than the mere possibility of misconduct," and the Amended Complaint "has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)

The Plaintiff may be attempting to assert a claim under the Fourteenth Amendment, which provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Indiana's tort claims act (Indiana Code § 34-13-3-1 et seq.) provides an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of the Plaintiff's property. *Wynn v. Southward*, 251 F.3d

588, 592–93 (7th Cir. 2001). The availability of a state remedy forecloses any Fourteenth Amendment due process claim that the Plaintiff may be trying to assert. *Id.*

I.  **Injunctive Relief Claim**

The Plaintiff seeks injunctive relief as well as monetary compensation. After he filed his Amended Complaint, however, the Plaintiff was transferred from the jail. That transfer rendered moot his claims for injunctive relief. When "a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quotation marks and citations omitted). There is no reasonable basis that he is "likely to be retransferred" to the jail. Therefore the injunctive relief claims will be dismissed.

**CONCLUSION**

Therefore, the Court:

(1) **GRANTS** the Plaintiff leave to proceed against Defendant Scott Bell in his individual capacity on his claim the Defendant caused him to be placed in "extremely cold" temporary holding cell, TH-5, to retaliate against him for exercising his First Amendment rights to file grievances and assist other prisoners to file grievances;

(2) **GRANTS** the Plaintiff leave to proceed against Scott Bell in his individual capacity on his claim that certain conditions, including extremely cold temperatures, in the temporary holding cell constituted unconstitutional punishment;

(3) **GRANTS** the Plaintiff leave to proceed on his RLUIPA claim;

(4) **DISMISSES** all other claims;

(5) **DENIES** the Plaintiff's Motion for Preliminary Injunctions [DE 8];

(6) **DIRECTS** the Clerk of the Court to transmit the summonses and USM-285s to the United States Marshals Service along with copies of this order and copies of the Amended Complaint [DE 7];

(7) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Scott Bell for the purpose of answering the claim upon which the Court granted the Plaintiff leave to proceed; and

(8) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), the Defendant to file an answer, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L. R. 10.1, only to the claims for which the Plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 19, 2009.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION